### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **HDEEL ABDELHADY,**<br><br>Plaintiff,<br><br>**v.**<br><br>**GEORGE WASHINGTON UNIVERSITY,** ***et al.***,<br><br>Defendants. | Case No. 1:22-cv-01334 (TNM) |

### <u>MEMORANDUM OPINION</u>[*]

Hdeel Abdelhady, a law professor, fell on a staircase at the George Washington University Law School campus.  She promptly filed for workers' compensation benefits with her employer, George Washington University (GW), which PMA Management Corporation (PMA) helped administer on GW's behalf.  Abdelhady now sues GW and PMA for claims arising out of her fall and their handling of her workers' compensation claim.  Her claims run the gamut from common law negligence to violations of federal racketeering and civil rights laws.

Defendants move to dismiss all counts.  They argue that the District of Columbia's Workers' Compensation Act provides the exclusive remedy for Abdelhady's injury.  In the alternative, they move for summary judgment and offer evidence in support.  Because the Workers' Compensation Act provides Abdelhady's exclusive remedy, the Court will grant

---

[*] An unredacted Memorandum Opinion was issued under seal on November 29, 2022.  This version contains redactions of confidential information.

Defendants summary judgment on her negligence claim.  The Court will dismiss the remaining counts for failure to state a claim.

## I.

GW employed Abdelhady as a part-time law professor.  Am. Compl. (Compl.) ¶ 3, ECF No. 13.  In May 2019, she attended an "adjunct appreciation luncheon" on GW's campus.  *Id.* ¶ 9.  As she left, she fell after stepping "on an uneven, sticky, and additionally hazardous stair surface."  *Id.* ¶ 12.  She hit the wall at the bottom of the stairwell, injuring her head, face, wrist, hand, and fingers.  *See, e.g., id.* ¶¶ 14, 29–30.  Abdelhady was taken to █████████████████ █████████ Hospital, where medical personnel diagnosed her ████████████████████ ███ The Hospital later billed her directly for "thousands of dollars" of treatment.  *Id.* ¶ 91.  ███ ███████████████████████████████████████████████████████████████████

Abdelhady "presumed" that the D.C. Worker's Compensation Act (WCA), D.C. Code § 32-1501, *et seq.*, applied to her injury.  *Id.* ¶¶ 92, 135.  So within a week of her accident, Abdelhady filed an incident report with GW's Office of Risk Management, and she later sent her hospital bills to GW at its request.  *Id.* ¶ 96–98.  She then learned of PMA's role as GW's third-party insurance administrator.  *Id.* ¶ 99.

But Defendants "immediately after the accident decided to not pay any wage indemnification to . . . Abdelhady, while knowing that [she] had not returned to work."  *Id.* ¶ 109.  Two weeks after Abdelhady filed her incident report with GW, GW filed a Notice of Controversion with the D.C. Department of Employment Services (Employment Services).  *Id.* ¶ 115.  The Notice "denied workers' compensation for the reasons that continuing disability was 'contested' and that 'no medical documentation had been received to support continuing disability payments.'"  *Id.* (cleaned up).  A few weeks after that, Defendants filed another Notice

of Controversion "stating that workers' compensation insurance was denied, on the grounds of
(1) no causal relationship to employment; (2) continuing disability contested; and, (3) other." *Id.*
¶ 122 (cleaned up).

Abdelhady "filed a workers compensation claim [with Employment Services] under the
belief that GWU held appropriate workers compensation coverage and that she was acting within
the scope of her employment." *Id.* ¶ 145.  Defendants did not pay Abdelhady wage
indemnification for 45 days. *Id.* ¶ 123.  Defendants eventually paid her. *Id.*  But she alleges the
payments were less frequent and smaller than "as mandated by the [WCA]." *Id.*  So she filed "an
application for a formal hearing to adjudicate her claims against [Defendants] for unpaid wage
indemnification, unfurnished medical support, and bad faith" with Employment Services. *Id.*
¶ 147.  Abdelhady claims that GW then filed a "false 'payroll record' omit[ting] GWU's salary
payment to . . . Abdelhady of May 31, 2019," with Employment Services to reduce its liability.
*Id.* ¶ 189–92.

During the prehearing discovery phase, Defendants obtained nine subpoenas for
Abdelhady's medical and law firm records from the administrative law judge (ALJ) presiding
over her claim. *Id.* ¶ 174.  She claims that Defendants' lawyer had ex parte communications
with the ALJ and offered to help her secure a Maryland judgeship. *Id.* ¶ 154.  Abdelhady
contends these subpoenas were illegal and thus caused four of her medical providers to release
privileged medical information in violation of their fiduciary duty to her. *Id.* ¶¶ 175–76.

Afterward, Abdelhady's "administrative case was dismissed without a formal hearing, for
the stated reason that [she] did not comply with [Defendants'] discovery requests, including for
her law firm client and business records." *Id.* ¶ 160.  She then petitioned for review of the ALJ's
order with the D.C. Court of Appeals, which the court dismissed for failure to exhaust

administrative remedies.  *See Abdelhady v. D.C. Dep't of Emp't Servs.*, No. 20-AA-176 (D.C. Feb. 22, 2022).[1]

Proceeding with counsel, this suit—and then a flurry of dispositive and miscellaneous motions[2]—followed.  GW moved to dismiss all claims, arguing that the WCA provides the exclusive remedy for Abdelhady's work-related injury.  *See* GW Mot. to Dismiss (GW MTD), ECF No. 17.  In the alternative, GW moved for summary judgment and submitted evidence showing its WCA coverage.  *See* GW Mot. for Summ. J. (GW MSJ), ECF No. 18.  Then PMA filed its own motion to dismiss, joining and adopting GW's positions.[3]  *See* PMA Mot. to Dismiss (PMA MTD), ECF No. 23.  These motions are ripe for decision.  This Court has jurisdiction under the federal question statute, 28 U.S.C. § 1331, and the diversity statute, 28 U.S.C. § 1332.  *See also* 28 U.S.C. § 1367.

---

[1]  Courts may consider "public records subject to judicial notice."  *Vasser v. McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016).

[2]  Taking just one example, Abdelhady filed a notice of appeal of this Court's minute order granting in part and denying in part her motion to seal various documents filed by GW.  *See* Notice of Appeal, ECF No. 57; Min. Order Sept. 26, 2022.  And GW then moved to strike.  ECF No. 60.  The Court will deny the motion as moot because Abdelhady's notice of appeal is defective and thus does not deprive this Court of jurisdiction.  *See Gilda Indus., Inc. v. United States*, 511 F.3d 1348, 1350 (D.C. Cir. 2008) ("[W]here the deficiency in a notice of appeal by reason of . . . reference to a non-appealable order . . . is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction").

[3]  Abdelhady has moved to strike PMA's reply to her opposition to PMA's motion to dismiss because the reply was untimely.  ECF No. 49.  PMA concedes its reply was untimely and asks the Court to grant an extension, explaining that a clerical error caused the delay.  *See* ECF No. 52-2 at 2.  The Court will deny the motion to strike.  *See* Fed. R. Civ. P. 6(b)(1)(B) (courts may extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect").  When the reply raises new arguments, the Court does not consider them.  The Court will also deny Abdelhady's motion for reconsideration, ECF No. 22, of this Court's order granting PMA an extension of time to file a responsive pleading.  *See* Min. Order August 4, 2022.

## II.

To pass muster under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And courts must accept plaintiffs' factual allegations as true and grant in their favor "all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).

Yet courts need not credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (cleaned up). Courts consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [it] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court credits the nonmoving party's factual allegations and draws all justifiable inferences in her favor when ruling on a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

Abdelhady now proceeds *pro se*. Yet she is "not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system and needs less protections from the court." *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 22 (D.D.C. 2018) (cleaned up), *aff'd sub nom.*, *Robinson v. Wutoh*, 788 F. App'x 738 (D.C. Cir. 2019). For starters, Abdelhady is practicing member of the

D.C. Bar.  *See* Compl. ¶ 55; Affidavit of Hdeel Abdelhady (Abdelhady SMJ Aff.) ¶ 12, ECF No.

26-5.  More, Abdelhady began proceeding *pro se* after substantive briefing on Defendants'

dispositive motions had finished.  *See* ECF No. 41.  Thus, Abdelhady's pleadings are not entitled

to the special solicitude that courts ordinarily give to *pro se* parties.

### III.

For every claim except Count I (negligence), Defendants argue that, even if the WCA

does not apply, Abdelhady's allegations fail to state a claim upon which relief can be granted.[4]

The Court agrees.

### A.

Count II alleges that Defendants violated the Racketeer Influenced and Corrupt

Organization (RICO) Act, 18 U.S.C § 1962, by "acting as an enterprise to make money and

subvert the [WCA]."  Compl. ¶ 304; *see also* 18 U.S.C. § 1964.  Defendants seek dismissal of

this claim for three reasons.  First, they suggest that Abdelhady failed to sufficiently allege a

"pattern" of racketeering activity necessary to state a claim.  Second, they contend that

Abdelhady failed to plead her allegations of fraud with sufficient particularity, as required by

Federal Rule of Civil Procedure 9(b).  Last, they argue that Abdelhady does not have an adequate

property interest in workers' compensation benefits to establish the injury to property required

for a RICO cause of action.  The Court agrees that Abdelhady failed to allege a pattern of

---

[4] PMA argues for first time in its reply that all counts alleging negligence should be dismissed as
to them because, as the third-party administrator of GW's compensation claims, PMA had no
duty to Abdelhady directly.  *See* Reply to Opp'n PMA MTD at 5–6, ECF No. 35.  The Court will
not consider arguments raised for the first time in reply.  *See, e.g.*, *Lu v. Lezell*, 45 F. Supp. 3d
86, 91 (D.D.C. 2014).

racketeering activity or that she suffered an injury to property, and thus it will dismiss Count II for failure to state a claim.[5]

Dismissal is warranted under Rule 12(b)(6) because Abdelhady failed to allege a plausible "pattern of racketeering activity." 18 U.S.C. § 1962. RICO requires a plaintiff to establish "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62 (1997). A "pattern" requires at least two predicate acts of racketeering activity. *Id*. "These predicate offenses are acts punishable under certain state and federal criminal laws, including mail and wire fraud." *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001) (cleaned up)

RICO's "pattern" requirement prevents "ordinary business disputes from becoming viable RICO claims." *W. Assocs. Ltd. P'ship*, 235 F.3d at 637. This element requires the predicate acts to be both related and continuous. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Defendants argue that Abdelhady fails to allege plausibly a "pattern" of racketeering activity because all her allegations relate to a single alleged scheme to deprive her of asserted rights under the WCA. GW MTD at 16–17. The Court agrees. Allegations of a "single scheme" that entails "but a single discrete injury" suffered by a "small number of victims" does not establish a pattern of racketeering activity. *Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995); *accord Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71, 82 (D.D.C. 2019). And that is what Abdelhady alleges here.

---

[5] Because the Court concludes that Abdelhady failed to allege a pattern of racketeering activity necessary to state a RICO claim, it need not reach Defendants' arguments about whether Abdelhady plead the predicate acts with sufficient particularity under Rule 9(b).

In her opposition, Abdelhady points to six alleged acts as establishing a pattern of racketeering activity. *See* Opp'n GW MTD at 26 (citing Compl. ¶¶ 36, 116, 122, 154, 196, 266). Three of these allegations pertain to Abdelhady's claim that GW filed false Notices of Controversion with Employment Services while administering her compensation claim. *See* Compl. ¶¶ 36, 116, 122. Two other acts allege improper communications between Defendants' attorney and the ALJ presiding over Abdelhady's claim. *See id.* ¶¶ 154, 196. Taken together, these allegations describe at most a "single scheme" to deprive Abdelhady of WCA benefits, "with no potential to extend to other persons or entities." *Edmonson*, 48 F.3d at 1265 (cleaned up). So the alleged acts of Defendants in administering her compensation claim do not show a pattern of racketeering activity.

Nor does the last allegation Abdelhady points to transform her dispute over workers' compensation benefits into a plausible RICO claim. She suggests that Defendants' pattern of racketeering activity went beyond their attempts to deny her workers' compensation benefits specifically. She claims that GW "specifically underreported claims and employment data" to Employment Services to decrease its required contributions into government funds that support the workers' compensation system. Opp'n GW MTD at 28; *see* Compl. ¶¶ 252, 256. This is unavailing.

Recall that to show a pattern of racketeering activity, Abdelhady must show continuity. That is, she must allege "that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *H.J. Inc.*, 492 U.S. at 239. Abdelhady's allegations fall far short. She has alleged no specific continuing acts of wire or mail fraud. She merely claims that Defendants' "pattern of conduct was and is fraudulent." Compl. ¶ 308. This allegation is not well-pleaded, *Iqbal*, 556 U.S. at 678, and Abdelhady fails to "identify [any]

other reasons to believe that the specter of RICO violations remains." *Ambellu*, 387 F. Supp. 3d

at 86. Thus, she has not plausibly alleged "activities that amount to or threaten long-term

criminal activity" sufficient to state a RICO claim. *H.J. Inc.*, 492 U.S. at 243 n.4.

But Abdelhady has another problem, too. Even if she had plausibly alleged a pattern of

racketeering activity, her RICO claim would still fail because she lacks statutory standing.

Abdelhady brings her RICO claim under 18 U.S.C. § 1964(c), which provides a cause of action

for "[a]ny person injured *in his business or property* by reason of a violation of [18

U.S.C. § 1962]." No matter which unlawful act under § 1962 Defendants are alleged to have

taken, Abdelhady must show that she has been "injured in [her] business or property." 18 U.S.C.

§ 1964(c). Abdelhady alleges the "deprivation of workers' compensation benefits." Opp'n GW

MTD at 30. Defendants argue that RICO claims are unavailable for an alleged deprivation of

workers' compensation benefits. They are correct.

Abdelhady fails to meaningfully respond to Defendants claim that she did not suffer an

injury to property under RICO. *See id.* at 30 (citing no authority and describing Defendants'

claim as "immaterial and no more than a strawman argument"). So the Court treats this

argument as conceded, dooming her RICO claim. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425,

428 (D.C. Cir. 2014) (noting courts may treat a claim as conceded "if a party files an opposition

to a motion and therein addresses only some of the movant's arguments").

In any event, the Court finds *Jackson v. Sedgwick Claims Managements Services, Inc.*,

731 F.3d 556 (6th Cir. 2013) (en banc), persuasive. There, the court held that "racketeering

activity leading to a loss or diminution of benefits the plaintiff expects to receive under a

workers' compensation scheme does not constitute an injury to 'business or property' under

RICO." *Id.* at 568. Thus, as Abdelhady has not alleged a pattern of racketeering activity or an

actionable injury to property under RICO, the Court will dismiss Count II for failure to state a claim.

## B.

In Count III, Abdelhady brings a claim of negligent infliction of emotional distress.  To recover here, she must show that "(1) the defendant has a relationship with plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff."[6] *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810–11 (D.C. 2011) (en banc). Abdelhady claims that a special relationship exists because GW "undertook an obligation to [her] . . . to act in compliance with both its own and the [WCA's] policies and procedures." Opp'n GW MTD at 31.  She also claims that GW's status as a landowner creates a special relationship.  *See id.* at 31–32.  Neither claim has merit.

Abdelhady's employment and work-related injury did not give rise to a special relationship.  The D.C. Court of Appeals teaches that "most cases claiming negligent infliction of emotional distress have arisen—as we think will continue to arise—in the context of doctor-patient relationships." *Hedgepeth*, 22 A.3d at 813.  This is so because in the doctor-patient context "the emotional well-being of others is at the core of, or is necessarily implicated by, the undertaking." *Id.*  On the other hand, "many other relationships, even if they involve fiduciary

---

[6] Abdelhady does not argue that she can recover under the "'zone of physical danger rule,' which permits recovery for mental distress if the defendant's actions caused the plaintiff to be in danger of physical injury and if, as a result, the plaintiff feared for his own safety." *Hedgepeth*, 22 A.3d at 797 (cleaned up); Opp'n GW MTD at 19–20.

obligations, generally will not come within the rule, because neither the purpose of the relationship nor the fiduciary's undertaking is to care for the plaintiff's well-being; rather the object of the engagement is to obtain a financial, commercial or legal objective." *Id.*

Abdelhady has failed to allege that she and Defendants were engaged in "a relationship or undertaking . . . that necessarily implicates [her] emotional well-being." *Id.* at 815.  The special relationship that Abdelhady describes is merely an employment relationship.  And it is well-established that "merely alleging an employer-employee relationship forecloses any special relationship liability." *Robinson*, 335 F. Supp. 3d at 31 (cleaned up); *see also, e.g.*, *Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016).  Nor is there any reason to think that it is "especially likely that serious emotional distress will result from" negligence in the administration of her workers' compensation claim. *Hedgepeth*, 22 A.3d at 813.

Finally, GW's status as a landowner does not create a special relationship with its invitees because "neither the purpose of the relationship nor [GW's] undertaking is to care for plaintiff's well-being." *Id.*  Were it otherwise, a business owner would be in a special relationship with every customer, a result rejected by the D.C. Court of Appeals in *Hedgepeth*.  Thus, Abdelhady fails to state a claim against Defendants for negligent infliction of emotional distress.

## C.

Abdelhady's fraud claims (Counts IV and V) also fail.  Defendants argue that Abdelhady's claims for fraud and fraudulent misrepresentation are insufficient under Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

"Courts have sometimes characterized a plaintiff's burden as providing the who, what, when, and where with respect to the circumstances of the fraud." *United States ex rel. Bid Solve, Inc. v. CWS Mktg. Grp.*, *Inc.*, 567 F. Supp. 3d 59, 66 (D.D.C. 2021) (cleaned up).  The purpose of this heightened standard is to "discourage the initiation of suits brought solely for their nuisance value, and safeguard potential defendants from frivolous accusations of moral turpitude," as well as "guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123 (D.C. Cir. 2015) (cleaned up).

Defendants argue that Abdelhady has not plead with particularity how she was influenced by, or relied on, Defendants' alleged misrepresentations.  For instance, she alleges that she "assumed" that her losses "would be covered by workers' compensation," but she does not identify the time, date, or content of any specific representation.  Compl. ¶ 86.  And she similarly alleges that GW misrepresented that "it was validly self-insured for workers' compensation" but fails to identify the time, place, or content of any such communication.  Compl. ¶ 92.  In her opposition, Abdelhady does not engage any of Defendants' arguments about her fraud claims.  She merely asserts that "[t]he alleged facts of this case make clear as to what the claims for fraud were, when they were made, how they were made, and to whom they were made."  Opp'n GW MTD at 32.

Abdelhady has conceded her claims of fraud and fraudulent misrepresentation.  She declined to materially address Defendants' Rule 9 arguments.  *See Wannall*, 775 F.3d at 428; *see also Schneider v. Kissinger*, 412 F.3d 190, 200 (D.C. Cir. 2005) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . A litigant has an obligation to

spell out its arguments squarely and distinctly, or else forever hold its peace." (cleaned up)). Abdelhady's Complaint sprawls over 68 pages and contains more than 350 numbered paragraphs. Because Abdelhady chose to leave Defendants' persuasive arguments unaddressed, the Court will dismiss Counts IV and V as conceded.

### D.

Consider next Count VIII, Abdelhady's claim for tortious inducement of breach of fiduciary duty.[7] She alleges that Defendants "made materially false and misleading representations of fact and law in eight medical records subpoenas to induce medical providers to disclose those medical records in violation of applicable law and [her] interests in privacy." Compl. ¶ 64. Defendants argue that Abdelhady fails to state a claim for two reasons. *See* GW MTD at 21–23. First, they argue that she has not alleged that a medical provider actually breached a duty to her. Second, they claim that she has not alleged that the issuance of subpoenas to her medical providers caused damage. Defendants are correct, and the Court will dismiss Count VIII.

In the District of Columbia, "a third party may be liable for another's alleged breaches of fiduciary duty if the third party can be shown to have induced this conduct." *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 711 (D.C. 2013) (cleaned up). "A predicate to any liability based on a theory of an inducement of a breach of a fiduciary duty is the breach of fiduciary duty by the principal." *Id.* The Court agrees with Defendants that Abdelhady has failed to allege facts suggesting that her medical providers breached any fiduciary duty.

---

[7] Abdelhady has withdrawn Counts VI and VII, which alleged negligence per se and gross negligence against Defendants. *See* Opp'n GW MTD at 32–33.

Abdelhady claims that four of her providers released privileged medical information *in response to subpoenas* issued by the ALJ presiding over her compensation claim.  Compl. ¶¶ 174–75.  And she claims that the subpoenas were issued in violation of the of Health Insurance Portability and Accountability Act (HIPAA) and D.C. law.  *Id.* ¶ 176.  But critically, Abdelhady "has not cast blame upon her medical providers because they were forced to produce the records under false pretenses."  Opp'n GW MTD at 34.  By acknowledging that her providers released her records in response to facially valid subpoenas, she has not alleged that her providers failed to "scrupulously honor the trust and confidence reposed in them because of that special relationship."  *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 591 (D.C. 1985).  After all, "the mere fact that a third person has gained unauthorized access to hospital records does not by itself establish that the provider was at fault or that it failed to exercise the utmost caution and prudence."  *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 951 (D.C. 2003) (cleaned up).  Thus, she has not alleged a breach of her fiduciary duty and fails to state a claim for relief.

Abdelhady's claim also fails because she does not plausibly allege damages caused by release of her privileged medical information.  "Breach of fiduciary duty is not actionable unless injury accrues to the beneficiary or the fiduciary profits thereby."  *Beckman v. Farmer*, 579 A.2d 618, 651 (D.C. 1990) (cleaned up); *see also Day v. Avery*, 578 F.2d 1018, 1029 (D.C. Cir. 1976) ("since neither injury to appellant nor profit to any appellee can be shown to flow from any nondisclosure complained of, appellant's allegation of breach of a fiduciary duty by nondisclosure must also fail").  Abdelhady has not plead facts sufficient for the Court to infer that the alleged release of her medical records caused any more than "only nominal damages or speculative harm."  *Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 573 (D.C. 2011).

So even if she had plausibly alleged breach, her claim would not be actionable.  Thus, the Court will dismiss Count VIII for failure to state a claim.

**E.**

Abdelhady also brings a common law claim for abuse of process (Count IX) related to Defendants' discovery of her medical records during the investigation of her workers' compensation claim.  Abdelhady's allegations fall short.

To prevail on her claim for abuse of process, Abdelhady must show that "the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do."  *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980) (cleaned up).  "The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."  *Scott v. District of Columbia*, 101 F.3d 748, 755–56 (D.C. Cir. 1996) (quoting Restatement (Second) of Torts § 682 cmt. B (1977)).  With these principles in mind, it should come as no surprise that Defendants' discovery practices do not justify a claim for abuse of process.

The WCA provides discovery mechanisms that allow parties to assess the scope of the opposing party's claims.  *See* D.C. Code § 32-1525 (providing that parties may conduct pre-hearing discovery "including but not limited to the use of interrogatories and depositions . . . [that] will be helpful in determining the rights of the parties).  Abdelhady seeks to hold Defendants liable for its use of these mechanisms.  *See* Compl. ¶ 364.  The abuse of process she describes is Defendants obtaining subpoenas for her medical providers and law firm.  *Id.* ¶ 365.

This does not state a claim for abuse of process.  Obtaining subpoenas for medical records is not the "achievement of some end not contemplated in the regular prosecution of" a workers' compensation claim.  *Morowitz*, 423 A.2d at 198.  Rather, "one who invokes the legal process to obtain such relief as it offers commits no abuse of process."  *Harrison v. Howard Univ.*, 846 F. Supp. 1, 3 (D.D.C. 1993).  And allegations "that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process."  *Scott*, 101 F.3d at 755.  Thus, Defendants' use of the WCA's discovery mechanisms does not plausibly allege an abuse of process.

The gravamen of this claim is that Defendants' discovery practices violated HIPAA.  *See* Opp'n GW MTD at 36 ("While the discovery process does allow for a party to seek one's medical records, the rules and HIPAA require certain steps to be taken in order to protect Plaintiff's rights.  Defendant knew of these rules and laws, failed to abide by them, and misrepresented to the court and health care providers that they had complied with them.").  The problem for Abdelhady is that HIPAA does not provide a private right of action.  *See Hudes v. Aetna Life Ins. Co.*, 806 F. Supp. 2d 180, 195–96 (D.D.C. 2011), *aff'd,* 493 Fed. Appx. 107 (D.C. Cir. 2012).  Her "sole remedy for an alleged HIPAA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, who has the discretion to investigate the complaint and impose sanctions, both civil and criminal."  *Orr v. Carrington*, No. 18-cv-1986, 2019 WL 176958, at *3 (D. Conn. Jan 11, 2019).  Thus, the Court will dismiss Count IX for failure to state a claim.

## F.

Abdelhady's last claim, Count X, alleges that Defendants violated 42 U.S.C. § 1983 while administering her workers' compensation claim.  Although she does not indicate which of

her civil rights Defendants violated, she suggests that she was denied "an impartial, rulebound 'contested case' before . . . [Employment Services]."  Compl. ¶ 369.  Abdelhady complains that Defendants obtained "favorable 'discovery' rulings" by giving "something of value" to the ALJ.  *See id.* ¶ 371.  Defendants respond that they are not liable under § 1983 because they did not act under color of state law.  Defendants are correct.

To state a § 1983 claim, Abdelhady "must allege both (1) that [s]he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted under color of the law of a state, territory or the District of Columbia."  *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991).  Private parties "may be deemed to have acted under color of law in two circumstances: when they conspire with state officials, and when they willfully engage in joint activity with a state or its agents."  *Id.*  But "mere recourse to state or local court procedures does not by itself constitute 'joint activity' with the state sufficient to subject a private party to liability under section 1983."  *Id.*  Abdelhady suggests that Defendants conspired with the ALJ overseeing her compensation case to obtain favorable discovery rulings, but her allegations cannot state a claim.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 30 (D.D.C. 2015) (cleaned up).  But conclusory allegations of a conspiracy do not plausibly allege § 1983 liability.  Abdelhady "must supply 'specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective,' and this evidence must 'reasonably lead to the inference that the defendants positively or tacitly came to a mutual understanding to try to accomplish a common

and unlawful plan.'"  *Austin v. District of Columbia*, No. 05-cv-02219, 2007 WL 1404444, at

*11 (D.D.C. May 11, 2007) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.

1996)).  So "[t]he mere repetition of a conclusory statement that a conspiracy exists and that all

the alleged events occurred as a result of a conspiracy are insufficient as a matter of law."

*Lemon v. Kramer*, 270 F. Supp. 3d 125, 142 (D.D.C. 2017).

Abdelhady's conspiracy allegations cannot survive dismissal.  She claims that

Defendants colluded with the ALJ presiding over her compensation claim so Defendants would

obtain favorable discovery rulings.  *See* Compl. ¶ 371.  Abdelhady has not plead facts suggesting

the existence of an agreement between Defendants and the ALJ.  She alleges that "Defendants

. . . acted in concert with the presiding ALJ . . . to deprive [her] of rights."  *Id.*  But this

conclusory allegation lacks factual support and is not well-pleaded.  *Iqbal*, 556 U.S. at 678.

Taking all inferences in her favor, Abdelhady does not plausibly allege that Defendants

and the ALJ "shared the same conspiratorial objective"—or even allege what that objective was.

*Hinkle*, 81 F.3d at 421.  Indeed, Abdelhady seems to suggest that the ALJ may have been an

*unknowing* participant in Defendants' alleged plan.  *See* Opp'n GW MTD at 44 ("Plaintiff has

asserted that counsel for Defendant GW engaged with a state official for the purposes of acting

under the color of law for the purposes of § 1983. . . .  While the ALJ may not have been aware

of such conduct at the time counsel made such considerations . . .").  Because Abdelhady has not

put forth "enough factual matter (taken as true) to suggest that an agreement was made" between

Defendants and the ALJ presiding over her compensation claim, the Court will dismiss Count X

for failure to state a claim.  *Twombly*, 550 U.S. at 556.

### IV.

Finally, consider Count I, Abdelhady's negligence claim.  Defendants assert that the

WCA provides the exclusive remedy for Abdelhady's injury, precluding her from bringing this claim in this Court.  Abdelhady responds that there is a dispute whether her injury is compensable under the WCA at all.  Defendants are correct that there is no genuine dispute that the WCA applies.  Thus, the Court holds that the WCA bars her negligence claim.[8]

The WCA applies to "injury . . . of an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury . . . while in the District of Columbia[.]"  D.C. Code § 32-1503(a)(1).  For covered injuries, the WCA "is unambiguous in its directive" that the statute provides the exclusive remedy against employers and their insurers. *Doe v. United States*, 797 F. Supp. 2d 78, 82 (D.D.C. 2011).  Section 32-1504(b) directs that "[t]he compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy against the employer . . . or . . . insurer."  More, § 32-1504(a) provides that "[t]he liability of an employer [under the WCA] shall be exclusive and in place of all liability of such employer to the employee . . . on account [of an alleged workplace injury]."

"[T]he law in this jurisdiction is clear that the WCA is the exclusive remedy for work-related injuries, with the result that common law tort claims arising from such injuries . . . are barred in civil actions."  *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 117 (D.D.C. 2012); *see also, e.g.*, *Doe*, 797 F. Supp. 2d at 82–84 (dismissing claims because WCA provided exclusive remedy for plaintiff's injury).

## A.

So "[i]f the exclusivity provision is deemed applicable in her case, [Abdelhady's] only remedy would be workers' compensation." *Tekle v. Foot Traffic, Inc.*, 699 A.2d 410, 412 (D.C.

---

[8]  Because the Court finds that Abdelhady's other counts fail to state a claim, the Court does not decide whether the WCA would also preclude those claims.

1997).  That is the situation here.  After Abdelhady was injured while leaving a GW Law faculty luncheon, she applied for workers' compensation under the WCA.  And after electing to receive WCA benefits, she successfully collected workers' compensation payments from GW.  Thus, there is no genuine dispute that the WCA applies to Abdelhady's injury.

Start with her allegations.  To begin, she states that "[a]t all times relevant to this action, [she] was employed part-time by [GW]."  Compl. ¶ 3.  And her operative Complaint is littered with allegations that she suffered an injury compensable under the WCA.  *See id.* ¶ 86 ("Because Ms. Abdelhady was an employee of GWU on May 15, 2019, . . . any claims for medical treatment . . . would be covered by workers' compensation insurance"); *id.* ¶ 236 (GW was "required by law" and by "Abdelhady's terms of employment with GWU" to "furnish workers' compensation"); *id.* ¶ 92 ("GWU did not . . . contact Ms. Abdelhady regarding her rights as required by the [WCA] that was presumed . . . to be applicable"); *id.* ¶ 197 ("GWU took . . . steps . . . to avoid Ms. Abdelhady's claim under the WC[A]").

And if there was any doubt, she affirmatively applied for workers' compensation benefits shortly after she was injured, claiming benefits for a "[f]all and collision in stairwell of GW law school."  ECF No. 32-1 at 1.  In her Application for Formal Hearing, she maintained that she was an "[e]mployee" who "sustained multiple injuries at [GWU]," and that GWU "failed to timely commence compensation."  ECF No. 32-3 at 2.  And there is no indication in the record that Abdelhady ever contested before Employment Services that her injuries arose out of her employment.  So the only implication of Abdelhady's resort to the workers' compensation system is that she suffered an employment-related injury.

Now, Abdelhady asks this Court to ignore her election (and receipt) of workers' compensation benefits and find that the WCA does not apply after all.  She argues that it is

inapplicable here because she was not acting within the scope of her employment at the time of the injury. Opp'n to GW MSJ at 18, ECF No. 26-1; Opp'n to GW MTD at 14–16, ECF No. 25-1. The Court disagrees. Her successful pursuit of workers' compensation benefits forecloses this argument.

The D.C. Court of Appeals has explained that "once a workmen's compensation act has become applicable either through compulsion *or election*, it affords the exclusive remedy for the injury by the employee." *Tekle*, 699 A.2d at 412 (quoting 6 Larson's Compensation Law, § 65.11 (1997 ed.) (emphasis added)); *see also Georgetown Univ. v. D.C. Dep't of Emp't Servs.*, 830 A.2d 865, 868 n.1 (D.C. 2003) (same). In other words, "an employee is barred from bringing a common law tort action against his employer for injuries which *have been . . . compensated* under the Act." *Garrett v. Wash. Air Compressor Co., Inc.*, 466 A.2d 462, 463 (D.C. 1983) (emphasis added).[9] Abdelhady affirmatively applied for benefits under the WCA, and she then received and accepted workers' compensation payments from GW. *See* Compl. ¶¶ 123, 145. Given her election of WCA benefits, the statute "affords the exclusive remedy for the injury" she sustained. *Tekle*, 699 A.2d at 412 (cleaned up).

Abdelhady responds that her election of benefits is not binding because "an election of a remedy which proves to be nonexistent is no election at all. Election . . . is a choice between two valid but inconsistent remedies; it is not the mistaken pursuit of a misconceived right when only one right in fact existed." Opp'n GW MTD at 16 (quoting 6 Larson's Workers' Compensation Law § 102.031 (1999 ed.)). But Abdelhady cannot have it both ways. The WCA benefits Abdelhady applied for did not "prove[] to be nonexistent" in any sense. *Id.* Rather, she

---

[9] *Garrett* interpreted the WCA's predecessor, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, which "is similar to [the WCA] in all relevant aspects." *Clark v. D.C. Dep't of Emp't Servs.*, 743 A.2d 722, 729 n.5 (D.C. 2000) (cleaned up).

successfully collected workers' compensation payments from GW through January 2020.  *See* ECF No. 32-8 at 1–4; *see also* Compl. ¶ 123.  And far from proving to Employment Services that the WCA offered no remedy, Abdelhady voluntarily withdrew her claim after *accepting* WCA benefits.  More, Professor Larson makes clear that "the most reliable" trigger of a workers' compensation act exclusivity provision "is the actual acceptance of compensation benefits."  6 Larson's Workers' Compensation Law § 100.012 (1999 ed.).  Abdelhady's successful election of benefits leaves no dispute that her injury is subject to the WCA.

Even if Abdelhady had not successfully elected to receive workers' compensation, the Court would still find that the WCA applies to her injury.  Abdelhady argues that the WCA is inapplicable because her injury was not work related.  The Court finds that there is no genuine dispute on this record that her injury, which occurred at GW Law following a faculty event, falls within the WCA's scope.

Abdelhady's "injury must both arise out of and occur within the course of [her] employment" to be covered by the WCA.  *Koslon v. D.C. Dep't of Emp't Servs.*, 699 A.2d 357, 359 (D.C. 1997) (citation omitted).  "Although 'arising out of' employment and 'arising in the course of' employment are distinct concepts, the two are not totally independent; frequently proof of one will incidentally tend to establish the other."  *Lee v. D.C. Dep't of Emp't Servs.*, 275 A.3d 307, 312–13 (D.C. 2022) (cleaned up).

Consider first the "arise out of" requirement.  This "refers to the origin or cause of the injury."  *Bentt v. D.C. Dep't of Emp't Servs.*, 979 A.2d 1226, 1232 (D.C. 2009) (cleaned up).  This "liberal standard" is expansive and "obviates any requirement . . . of a causal relationship between the nature of the employment and the risk of injury."  *Georgetown Univ.*, 830 A.2d at

872.  And importantly, "an employee need not be engaged in activity of benefit to the employer at the time of the injury."  *Id.*

D.C. courts apply the positional-risk test, which categorizes a risk in one of three ways: (1) "risks distinctly associated with the employment," (2) "risks personal to the claimant," and (3) "'neutral' risks—*i.e.*, risks having no particular employment or personal character."  *Bentt*, 979 A.2d at 1232 (cleaned up).  Injuries flowing from employment-related risks are "universally compensable" while those arising out of neutral risks are compensable when the injury "would not have happened *but for* the fact that conditions and obligations of the employment placed claimant in a position where he was injured."  *Id.*  On the other hand, injuries arising from personal risks are "universally noncompensable."  *Id.*

Abdelhady argues that her risk of falling was neutral so that the WCA applies only if the conditions and obligations of her employment were the but for cause of injury.  Opp'n GW MTD at 14–16.  Assuming she is right, the Court still concludes that her injury is covered by the WCA because her teaching obligations were the but for cause of her fall.  *See Gaines v. D.C. Dep't of Emp't Servs.*, 210 A.3d 767, 772–73 (D.C. 2019) (assuming without deciding that workplace escalator posed neutral risk of falling); *Lee*, 275 A.3d at 311–13 (assuming without deciding that curb posed neutral risk of falling).

Abdelhady contends that "in no sense did [her] conditions of acting as a part-time professor obligate her presence at a luncheon on campus."  Opp'n GW MTD at 15.  The Court accepts Abdelhady's undisputed assertion that her contractual arrangement with GW did not formally obligate her to attend the adjunct appreciation luncheon that preceded her fall.  Opp'n GW MSJ at 11.  But the question is not whether Abdelhady had to be at the luncheon.  Rather, the inquiry is whether her injury would have happened "but for" her teaching obligations.  *Bentt*,

979 A.2d at 1232.  And Abdelhady fell on GW's campus because of her employment obligations: but for her teaching, she would not have been invited to the faculty appreciation luncheon and exposed to the risks of attendance.  *See also Gaines*, 210 A.3d at 773 ("injuries that occur at the workplace as a result of a neutral risk arise out of the employment").

Consider next the "in the course of" requirement, which focuses on "the time, place,[] and circumstances under which the injury occurred."  *Niles v. D.C. Dep't of Emp't Servs.*, 217 A.3d 1098, 1103 (D.C. 2019).  "An injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while the employee is reasonably fulfilling duties of her employment or doing something reasonably incidental thereto."  *Id.* (cleaned up).  As an adjunct professor, Abdelhady "may reasonably be expected to be" at a faculty appreciation luncheon, and a faculty luncheon "is reasonably incidental" to her employment obligations.  *Id.* (cleaned up).

Now, Abdelhady makes the remarkable claim that—despite applying for, receiving, and accepting workers' compensation benefits from GW—she was not employed at all by GW when she was injured.  This cannot be reconciled with her Complaint.  *See, e.g.*, Compl. ¶ 3 ("[a]t all times relevant to this action, [she] was employed part-time by [GW]"); Compl. ¶ 86 ("Because . . . Abdelhady was an employee of GWU on May 15, 2019 . . .").  Undeterred, Abdelhady claims in her opposition that what she really meant was that she "has been employed part-time in different periods in which she was actively teaching, and not continuously."  Opp'n GW MSJ at 3.  She also produced an affidavit in which she now asserts that "her employment status with . . . GWU is 'terminated'" outside of an academic semester.  Abdelhady SMJ Aff. ¶ 12.  Defendants

counter that this representation is inadmissible under the "sham affidavit" rule.  Reply to Opp'n GW MSJ at 7–10, ECF No. 32.[10]  The Court agrees.

The sham affidavit rule "precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the shifting party can offer persuasive reasons for believing the supposed correction is more accurate than the prior testimony." *Galvin v. Eli Lilly Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (cleaned up).  Disputes of material facts should be between parties, not between different versions of one party's own claims.  But if the challenged affidavit "does not contradict but instead clarifies the prior sworn statement, then it is usually considered admissible." *Id.*

According to Defendants, Abdelhady's claim that she was not a GW employee directly contradicts her earlier sworn statements to Employment Services while she pursued workers' compensation benefits.  GW submitted an affidavit that Abdelhady produced in support of her motion to disqualify the ALJ presiding over her worker's compensation claim.  First Affidavit of Hdeel Abdelhady (First Abdelhady Aff.), ECF No. 32-13.  In that affidavit she states: "I am employed part-time . . . at [GW] and have so been employed continuously from approximately August 2004." *Id.* ¶ 6.  In other words, as in her operative Complaint, Abdelhady unambiguously represented that she was a GW employee at the time of her injury.  The Court finds that this directly contradicts the affidavit she prepared to oppose summary judgment in

---

[10]  Abedelhady has moved to file sur-replies to GW's motion to dismiss and GW's motion for summary judgment. *See* ECF Nos. 46 (MTD), 48 (MSJ).  Surreplies "are generally disfavored" and the decision "as to whether to grant or deny leave is entrusted to the sound discretion of the" Court. *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012).  The Court will deny the motions because Abdelhady has not shown that GW's "repl[ies] in fact raise[] arguments or issues for the first time" nor that her proposed filings "would be helpful to the resolution of the pending motion[s]" whatsoever. *Id.*

which she claims that, "[o]utside of an [academic semester], I am not and have not been an employee of GWU."  Abdelhady SMJ Aff. ¶ 12.

Thus, Abdelhady's prior assertion that she was a GW employee when injured "will receive controlling weight unless [she] can offer persuasive reasons for believing the supposed correction."  *Pyramid Sec. Ltd. v. IB Resol., Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991).  And although Abdelhady may explain her repudiation "by offering newly discovered evidence," the evidence on which she relies cannot justify her contradictory testimony.  *Id.*

Abdelhady produced GW employee records to support her claim that she was not a GW employee on May 15, 2019.  ECF Nos. 29 at 8–11 (sealed), 26-5 at 8–11 (unsealed).  But these records indicate that her personnel status was *"active"* on the date of her injury.  *See* ECF No. 29 at 8–9.  The Court fails to see how this undermines Abdelhady's earlier statement to Employment Services that GW employed her when she fell.  To the contrary, these records demonstrate that Abdelhady's employment status was "active" throughout May 2019.  In any event, it is hard to see how either her own employment documents or status could be "newly discovered" for her.  *Pyramid*, 924 F.2d at 1123.

The remaining evidence that Abdelhady relies on to contest her status as a GW employee does not explain her radically-changed sworn testimony.  Abdelhady produced a payroll record that she claims "indicat[es] that . . . [she] was not employed by GWU after April 30, 2019."  ECF No. 26-5 at 29.  Abdelhady fails to advance a good faith argument.  To be sure, the payroll record does not show for sure whether GW paid Abdelhady after April 30, 2019 (the last entry).  *See id*.  But the Complaint specifically alleges that this payroll record is "*false*" because it "omitted GWU's salary payment to . . . Abdelhady of May 31, 2019."  Compl. ¶ 192.  So Abdelhady's income history does not provide a "persuasive reason[]" for her incompatible

statements about her employment status.  *Pyramid*, 924 F.2d at 1123.  It is not "newly discovered evidence" that could explain her convenient change of heart before this Court.  *Id.*  Rather, taken with the allegations in her Complaint, the payroll record confirms that GW employed Abdelhady at the time of the accident.

In applying the sham affidavit rule, the D.C. Circuit has stressed that "parties' opportunism should not readily imperil summary judgment."  *Id.* at 1124.  This Court agrees, and it will not reward Abdelhady's opportunism here.  She has not undermined her sworn testimony to Employment Services with anything more than a self-serving affidavit prepared to oppose summary judgment.  Abdelhady does not raise a material issue about her employment status when she fell.  Thus, because her injury is an "accidental injury . . . arising out of and in the course of employment," the WCA applies.  D.C. Code § 32-1501(12).

Even if the Court were to consider the portions of Abdelhady's affidavit asserting that she was not a GW employee at the time of injury, the analysis would not change.  The Court finds that Abdelhady's evidence "is not significantly probative" nor sufficient to create a genuine dispute over her employment status.  *See Anderson*, 477 U.S. at 250.  This Court will not sanction her attempt to rewrite her employment history after she proceeded through the workers' compensation process, collected benefits under the WCA, and repeatedly represented under penalty of perjury that she was an employee.

## B.

Abdelhady brings other challenges to the WCA's applicability to her injury.  None are persuasive.  She first claims that GW "has yet to provide information to establish that it properly obtained self-insured status."  Opp'n GW MSJ at 18.  This argument is patently frivolous.

27

Consider first the affidavit of Jefferson Smith, GW's Assistant Director of Insurance and Contracts Risk Management.[11]  Affidavit of Jefferson Smith (Smith Aff.), ECF No. 18-2.  Smith asserted that (1) GW has been certified as a self-insured employer by Employment Services continuously since 1989, (2) GW posted the required Indemnity Bond with the District, and (3) GW possessed a valid Certificate of Self-Insured Status when Abdelhady was injured.  *Id.* ¶¶ 4, 7–8.  But the Court need not take Smith's word for it.  GW submitted a letter from Employment Services indicating that it had "furnished satisfactory proof of its financial ability to meet any and all liabilities for workers' compensation indemnity and medical benefits" and was "approved to continue its status as a self-insured employer" through the time that Abdelhady was injured.  Letter from Lisa Baxter, Assoc. Dir., Off. of Workers' Comp., to Jefferson Smith (June 21, 2018), ECF No. 18-3.

Still more, GW submitted a Continuation Certificate from its insurance company demonstrating that the required $800,000 Indemnity Bond had been posted and was in effect when Abdelhady was injured.  *See* Continuation Certificate, ECF No. 18-4.  GW also submitted

---

[11]  Abdelhady has filed a separate motion to strike Smith's affidavit.  *See* ECF No. 28.  She later moved for leave to file a supplemental memo and exhibits in support of her motion.  *See* ECF No. 53.  Her main objection is that Smith's affidavit is inadmissible for lack of personal knowledge and for its reliance on uncertified documents.  *See* ECF No. 28 at 2.  Having evaluated the motion, the opposition, and Abdelhady's supplemental memo and exhibits, the Court finds that Abdelhady has not shouldered the "heavy burden" necessary to justify striking Smith's affidavit.  *Canady v. Erby Elektromedizin GmbH*, 384 F. Supp. 2d 176, 180 (D.D.C. 2005); *see also Barnes v. District of Columbia*, 289 F.R.D. 1, 26 (D.D.C. 2012) (motions to strike are "strongly disfavored").  Smith explicitly states that he has personal knowledge of all matters addressed in his affidavit, "satisfying the low bar set forth in Rule 56's personal knowledge requirement."  *Wye Oak Tech., Inc. v. Republic of Iraq*, No. 10-cv-01182, 2018 WL 5983385, at *8 (D.D.C. Nov. 14, 2018); Smith Aff. ¶ 1.  More, "a nonmovant is not required to produce evidence in a *form* that would be admissible at trial," and the Court finds that the contents of Smith's affidavit are "capable of being converted into admissible evidence."  *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).  Thus, Abdelhady's motion to strike Smith's affidavit will be denied, and her motion for leave to file a supplemental memo and exhibits will be denied as moot.

a copy of its insurance policy.  *See* Insurance Policy, ECF No. 18-6.  And GW provided a copy

of the Certificate of Self-Insured Status issued by Employment Services for the period

encompassing Abdelhady's injury.  *See* Certificate of Self-Insured Status, ECF No. 18-5.  GW

has clearly shown—through affidavit, correspondence from the D.C. Government, and

certification from the District—that GW was a lawful self-insured employer under the WCA.

Despite the extensive documentary evidence showing that GW was validly self-insured,

Abdelhady insists that "there is a clear dispute over whether [GW] properly reported payroll and

employment figures to both its insurance carrier and [Employment Services] in order to be

validly self-insured."  Opp'n GW MSJ at 21.  The problem for Abdelhady is that she has not

produced any evidence suggesting that GW fraudulently obtained insurance coverage.

It is not enough for her to "plead . . . inaccuracies in the record keeping and reporting."

*Id.*  After all, "a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not

withstand summary judgment."  *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993) (cleaned up).

To "accept[] such conclusory allegations as true . . . would defeat the central purpose of the

summary judgment device, which is to weed out those cases insufficiently meritorious to warrant

the expense of a jury trial."  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Thus,

Abdelhady's unadorned speculation about the validity of GW's insurance policy does not raise a

triable issue on GW's self-insured status or the WCA's effect.

Abdelhady also argues that the WCA has no effect here because GW has failed to show

that "it does not have an indemnitor-indemnitee relationship that trumps the exclusive remedy

provision."  Opp'n GW MTD at 17.  Abdelhady relies on *Holt v. Walsh Group*, which explained

that "express indemnification language in [a] subcontract" can "trump the WCA's exclusivity

provision."  316 F. Supp. 3d 274, 279 (D.D.C. 2018).  *Holt* is inapt.  That case reaffirmed the

proposition that a third-party tortfeasor may seek indemnity from an employer for an employee's

negligence action despite the WCA's exclusivity provision. *See id.* ("This express

indemnification agreement, if freely entered . . . must be given effect and operates under [D.C.]

law to bar the WCA's exclusivity provision."). *Holt* does not suggest that an employee may

invoke a third-party's indemnity agreement to avoid the WCA's exclusivity provision.

Similarly, Abdelhady claims that "[i]f Aramark was not an agent of GWU and was

instead an independent contractor, the [WCA] would have no effect at all in this matter." Opp'n

GW MTD at 19.  (GW contracted with Aramark to provide facilities services.  Compl. ¶ 7–9.)

This is incorrect.  She relies on *Henderson v. Charles E. Smith Management, Inc.*, 567 A.2d 59,

61 (D.C. 1989), and *Beegle v. Restaurant Management*, 679 A.2d 480, 484 (D.C. 1996), to

conclude that GW "is not afforded the protections of the [WCA] for the negligence of its

independent contractor."  Opp'n GW MTD at 20.  But *Henderson* and *Beegle* merely hold that

the WCA may permit an employee to sue her employer's independent contractor for negligence.

Neither suggests that an employer's liability changes upon hiring an independent contractor.  The

question of Aramark's liability as an alleged independent contractor is not before the Court, and

the extent of that liability is unrelated to the WCA's application to Defendants.

Abdelhady also argues that GW is equitably estopped from asserting that the WCA

provides her exclusive remedy.  *See* Opp'n GW MTD at 17–18.  She relies on GW's initial

representation to Employment Services that she "was not acting within the scope of her

employment at the time of the incident."  *Id.* at 18.  Abdelhady misapprehends the doctrine.

"Equitable estoppel applies to preclude a party from contradicting testimony or pleadings

*successfully* maintained in a prior judicial proceeding against the identical adverse party, where

the adverse party acted in reliance upon the opponent's prior position and now faces injury if a

30

court were to permit the opponent to change positions." *Dennis v. Jackson*, 258 A.3d 860, 870 (D.C. 2021) (emphasis added). That is, estoppel requires "a prior judicial *acceptance* of the factual assertion made by the party who now advances an inconsistent contention." *Konstantinidis v. Chen*, 626 F.2d 933, 936 n.6 (D.C. Cir. 1980) (emphasis added). The evidence shows that GW withdrew its assertion that Abdelhady's accident did not arise out of and in the course of employment and that GW informed her directly that it was withdrawing this defense. *See* ECF No. 32-7 at 1–2. So GW is not equitably estopped from asserting that the WCA applies.

*   *   *

With the applicability of the WCA resolved, the Court turns to Abdelhady's negligence claim. This claim falls squarely within the WCA's ambit. The WCA provides the exclusive remedy for *any* workplace injury that falls within its scope, *see* D.C. Code § 32-1504(b), and "[t]he only injuries that fall outside the scope of the WCA are injuries specifically intended by the employer to be inflicted on the particular employee who is injured." *Vazant v. WMATA*, 557 F. Supp. 2d 113, 117 (D.D.C. 2008) (cleaned up). So Abdelhady's negligence action is barred by the WCA. *See, e.g.*, *Lockhart*, 905 F. Supp. 2d at 117 ("the law in this jurisdiction is clear that the WCA is the exclusive remedy for work-related injuries, with the result that common law . . . claims for negligence . . . are barred in civil actions); *Doe*, 797 F. Supp. 2d at 83. Thus, the Court will grant Defendants summary judgment on Count I.[12]

---

[12]  Because the Court considers matters outside the pleadings, the Court exercises its discretion to convert PMA's motion to dismiss into a motion for summary judgment under Rule 56. *See, e.g.*, *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006) (court may treat a motion to dismiss as one for summary judgment when "both parties had a reasonable opportunity to present all material made pertinent to such a motion by Rule 56" and "none of the[] materials raise any issue of material fact"). Abdelhady had ample opportunity to

**V.**

For these reasons, the Court will grant Defendants summary judgment on Count I and dismiss Counts II, III, IV, V, VIII, IX, and X without prejudice.  The Court will deny Defendants' motions to dismiss insofar as they request dismissal with prejudice.  Dismissals with prejudice under Rule 12(b)(6) are disfavored in this Circuit, and the "standard for dismissing a complaint with prejudice is high."  *Coon v. Wood*, 68 F. Supp. 3d 77, 82 (D.D.C. 2014); *see also, e.g.*, *Rudder v. Williams*, 666 F.3d 790, 794–95 (D.C. Cir. 2012) (dismissal with prejudice is "the exception, not the rule" and is "warranted only when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").  That high standard is not met here.  A separate Order will issue.

Dated: December 1, 2022                              _____

                                                                  TREVOR N. McFADDEN, U.S.D.J.

---

present material and develop a record here, including through her earlier workers' compensation proceedings.